The People of the State of New York, Respondent,
against
Christopher Williams, Appellant.



Appeal from a judgment of the Criminal Court of the City of New York, Kings County (Dena E. Douglas, J., at trial; Matthew A. Sciarrino, Jr., J., at sentencing), rendered November 8, 2013. The judgment, insofar as appealed from as limited by the notice of appeal, convicted defendant, after a nonjury trial, of attempted assault in the third degree.




ORDERED that the judgment of conviction, insofar as appealed from, is affirmed.
Defendant was charged with, among other things, attempted assault in the third degree (Penal Law §§ 110.00, 120.00 [1]). At a nonjury trial, the Criminal Court admitted into evidence, as present sense impressions, over defendant's objections, two recordings of 911 calls made by an anonymous male caller. In the first anonymous call, the caller stated that a male, who was wearing tan pants and no shirt, was "beating on" a woman at a specified address, and that "they're fighting right now." He then told the 911 operator to "hold on" so that he could verify the address and said "I'm walking," after which he provided the operator with a different building number. In the second anonymous call, the caller stated that he had called 911 10 minutes earlier and the police had still not arrived, and that the male he had previously described was now wearing a blue shirt. The court also admitted into evidence, as excited utterances, over defendant's objections, three recordings of 911 calls made by the complainant, who did not testify at trial. In the first call, the complainant stated that her boyfriend was "fighting me," at a specified address, and she described her boyfriend as wearing khaki pants with no shirt. She also stated that she was "bleeding profusely," but did not need an ambulance. About 10 minutes later, in her second call, the complainant stated that she was at the same address, that she was bleeding from her mouth, and that her mouth was split open. In the third call, eight minutes later, the complainant stated that she was at the same address, that she needed a police car, that her mouth was split open, that she needed an ambulance, and that the police should hurry up because her boyfriend, whom she described as now wearing khaki pants and a blue shirt, was trying to leave to go to work.
The responding police officer testified that, when she arrived at the scene, she saw the complainant "on her hands and knees wiping blood up from the floor." She asked the complainant if she was okay, and the complainant replied that "she had to clean up the blood before her son came home from school." The officer testified that the complainant "was very upset, crying and shaking. She was trembling. Voice was shaky." When the officer then asked the complainant what had happened, the complainant stated that her husband had "punched her in [*2]the face." The officer next asked the complainant who her husband was, and the complainant pointed in the direction of defendant. The Criminal Court admitted into evidence, over defendant's objections, the foregoing statements that the complainant had made to the responding police officer. The officer further testified that she had observed that the complainant "had a gash or a hole . . . on the left side of her face right by her mouth," and that blood was coming from the gash.
Defendant and his witness, who had been present during the incident, both testified to the effect that the complainant had been the initial aggressor, that defendant had been defending himself, and that the complainant had sustained her injury in an accidental fall. Insofar as relevant to this appeal, following the trial, the Criminal Court found defendant guilty of attempted assault in the third degree.[FN1]


Contrary to defendant's contentions, we find that the recordings of the anonymous 911 calls constituted present sense impressions (see People v Vasquez, 88 NY2d 561 [1996]; People v Brown, 80 NY2d 729 [1993]; People v Marino, 21 AD3d 430 [2005]), and the recordings of the complainant's 911 calls, as well as her statements to the responding police officer, constituted excited utterances (see People v Johnson, 1 NY3d 302 [2003]; People v Edwards, 47 NY2d 493, 497 [1979]). Moreover, a review of the record indicates that the admission into evidence of the recordings of the 911 calls, and of the complainant's statements to the responding police officer—pursuant to the present sense impression and excited utterance exceptions to the hearsay rule—was proper and did not violate defendant's right to confrontation, since the statements were not testimonial in nature (see People v Nieves-Andino, 9 NY3d 12, 14-16 [2007]; People v Clay, 88 AD3d 14, 17-25 [2011]; see also Michigan v Bryant, 562 US 344 [2011]).

The Criminal Court did not abuse its discretion in denying defendant's request for a missing-witness charge based on the complainant's failure to testify. The record indicates that the complainant was not under the People's control, as evidenced by her signed waiver in which she stated that she did not want to pursue the matter, and by the fact that she did not respond to the subpoena issued for her to testify at trial (see People v Marino, 21 AD3d 430). In any event, any error due to the court's denial of defendant's request for a missing witness charge in this bench trial was rendered harmless inasmuch as, during his summation, defense counsel was repeatedly allowed to comment upon the People's failure to produce the complainant at trial (see People v Wilkins, 75 AD3d 847, 849 [2010]; People v Demagall, 63 AD3d 34, 40 [2009]).

Furthermore, weighing the relative probative force of the conflicting testimony and the relative strength of the conflicting inferences that may be drawn from the testimony (see People v Zephyrin, 52 AD3d 543, 543 [2008]), we find that the Criminal Court did not fail to accord the evidence the weight it should have been accorded. We note that the court was in the best position to view the witnesses, hear their testimony, and observe their demeanor (see People v Lane, 7 NY3d 888, 890 [2006]). Consequently, the verdict convicting defendant of attempted assault in the third degree was not against the weight of the evidence (see People v Romero, 7 NY3d 633, 643-646 [2006]). Defendant's remaining contentions lack merit or are unpreserved for appellate review.

Accordingly, the judgment of conviction, insofar as appealed from, is affirmed.

Pesce, P.J., and Aliotta, J., concur.

Weston, J., dissents in a separate memorandum.

SUPREME COURT OF THE STATE OF NEW YORK

APPELLATE TERM : 2nd, 11th and 13th JUDICIAL DISTRICTS

PRESENT : PESCE, P.J., WESTON and ALIOTTA, JJ. 

THE PEOPLE OF THE STATE OF NEW YORK,

Respondent,

against-

NO. 2014-561 K CR

DECIDED

CHRISTOPHER WILLIAMS,

Appellant.

Weston, J., dissents and votes to reverse the judgment of conviction, insofar as appealed from, and to remit the matter to the Criminal Court for a new trial on the charge of attempted assault in the third degree, in the following memorandum:

In my opinion, the court below erred in declining to give a missing witness charge based on the complainant's failure to testify. On this basis, I would reverse so much of the judgment as convicted defendant of attempted assault in the third degree (Penal Law §§ 110.00, 120.00 [1]) and order a new trial as to that charge. 

A party requesting a missing witness charge bears the initial burden of showing that the [*3]witness can be expected to have knowledge about a material issue and to provide noncumulative testimony favorable to the opposing party (see People v Savinon, 100 NY2d 192, 197 [2003]; People v Kitching, 78 NY2d 532, 536-537 [1991]; People v Gonzalez, 68 NY2d 424, 427-428 [1986]). Once this burden has been met, the opposing party must then "account for the witness' absence" by demonstrating that the witness is unavailable or not under the opposing party's control (People v Gonzalez, 68 NY2d at 428). It is undisputed that the complainant's testimony in this case would have been material and noncumulative. As the victim of the crime, the complainant presumably would have testified in the People's favor and, thus, would have been under the People's control (see id. at 429). The question here, however, is whether the complainant was unavailable. In my opinion, she was not. 

" Availability' is often a question of degree" (People v Savinon, 100 NY2d at 198). To establish a witness' unavailability, the People must demonstrate " that the witness' whereabouts are unknown and that diligent efforts to locate him [or her] have been unsuccessful' " (People v Marsalis, 22 AD3d 866, 868 [2005], quoting People v Gonzalez, 68 NY2d at 428). Since the People's case rested almost entirely on the complainant's allegations, "one would expect [the People] to go to Herculean lengths" to produce the complainant at trial (People v Savinon, 100 NY2d at 199). Instead, the People merely obtained a waiver from the complainant at the outset of the case, followed several years later by a last minute subpoena served on the complainant's friend. Such efforts fall short of being diligent (see e.g. People v Brooks, 62 AD3d 511 [2009] [the People established diligent efforts to locate a witness by repeatedly urging the witness to cooperate and by serving several subpoenas]; People v Marsalis, 22 AD3d at 867 [the court erred in denying the defendant's request for a missing witness charge where the People made no effort to locate the complainant's brother, an eyewitness to the crime, except to ask the complainant for his telephone number and/or address]). In the case at bar, since the People failed to establish the complainant's unavailability, the Criminal Court improvidently exercised its discretion in denying defendant's request for a missing witness charge.

Unlike the majority, I cannot conclude that the Criminal Court's error in denying the charge was harmless (see People v Marsalis, 22 AD3d at 869). "The fact that defendant's counsel was permitted to comment on summation regarding the uncalled [complainant], under the circumstances of this case, does not render the error harmless" (People v Krupnik, 46 Misc 3d 142[A], 2015 NY Slip Op 50174[U], *2 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2015]). The proof of defendant's guilt of attempted assault in the third degree was far from overwhelming, as it rested solely on the complainant's own out-of-court statements and those of an anonymous 911 caller. Such proof was sharply disputed by the testimony of defendant and the defense eyewitness. Even if the evidence were overwhelming, it cannot be said that "there is no significant probability that the [finder of fact] would have acquitted defendant had the error not occurred" (People v Williams, 25 NY3d 185, 194 [2015]).

Accordingly, I vote to reverse the judgment of conviction, insofar as appealed from, and to remit the matter to the Criminal Court for a new trial on the charge of attempted assault in the third degree.



Decision Date: July 26, 2016



Footnotes

Footnote 1: Defendant was also found guilty of harassment in the second degree (Penal Law § 240.26). However, since defendant's notice of appeal states that he is appealing "from the judgment convicting him on May 14, 2013, of violation of the New York Penal Law Section(s) 110/120.00(1) . . . rendered . . . November 08, 2013," this court's review is limited to so much of the judgment as convicted defendant of attempted assault in the third degree.